* Simmons First National Bank of Pine Bluff, Arkansas, was a plaintiff in the District Court, and the United States of America, Internal Reve-

**Gary E. ROSS and Kay Ross, Appellants,**

v.

**Mahlon MARTIN, Director of the Department of Finance & Administration of the State of Arkansas, in his official capacity, Appellee.***

No. 86–1338.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 14, 1986.

Decided Sept. 15, 1986.

nue Service, was a defendant. As these parties are not interested in the appeal, we have omitted them from the caption in our Court.

John Wesley Hall, Jr., Little Rock, Ark., for appellants.

Joseph V. Svoboda, Little Rock, Ark., for appellee.

Before McMILLIAN, ARNOLD and BOWMAN, Circuit Judges.

ARNOLD, Circuit Judge.

Gary E. and Kay Ross appeal from an order of the District Court[1] granting summary judgment in favor of Mahlon Martin, Director of the Department of Finance and Administration of the State of Arkansas (DFA), and rejecting the Rosses' challenge to the constitutionality of the Arkansas Tax Procedure Act, Ark.Stat.Ann. §§ 84– 4701–4744 (Repl.1980 & Supp.1985). Because we agree that the Act, both on its face and as applied to the Rosses, satisfies the requirements of the Due Process Clause of the Fourteenth Amendment, we affirm the judgment of the District Court.

In April 1984, the Rosses received a notice from the DFA stating that because the Internal Revenue Service had adjusted their reported taxable income for 1980, they needed to file an amended state income-tax return to reflect the change in tax liability. The notice explained that failure to file an amended return within sixty days would result in an assessment of the tax due, plus a penalty and interest.

On July 30, 1984, having received no response from the Rosses, the DFA sent a second notice indicating that a proposed assessment of $306.45 was being made in accordance with Ark.Stat.Ann. § 84–4718.[2] In addition to explaining the basis for the deficiency, the notice advised the Rosses that if they did not agree with the proposed assessment, they could file a written protest with the Commissioner of Revenues within thirty days, and request an adminis-

---

1. The Hon. Henry Woods, United States District Judge for the Eastern District of Arkansas.

2. Section 84–4718 provides in pertinent part:

   If any taxpayer fails to file any return as required by any State tax law, the Commissioner, from any information in his possession or obtainable by him, may determine the correct amount of tax for the taxable period. If a return has been filed, the Commissioner shall examine the return and make any audit or investigation that he considers necessary. When no return has been filed and the Commissioner determines that there is a tax due for the taxable period, or when a return has been filed and the Commissioner determines that the tax disclosed by the return is less than the tax disclosed by his examination, the Commissioner shall propose the assessment of additional tax plus penalties, as the case may be, and shall give notice of the proposed assessment to the taxpayer. The notice shall explain the basis for the proposed assessment and shall state that a final assessment, as provided by Section 12 [§ 84–4712], will be made if the taxpayer does not protest such proposed assessment as provided at [by] Section 19 [§ 84–4719].
   Section 84–4719 provides:

   (a) Any taxpayer who wishes to seek relief from any proposed assessment of taxes by the Commissioner shall follow the procedure provided by this section.
   (b) A taxpayer may at his option either request the Commissioner to consider his request for relief solely upon written documents furnished by the taxpayer or upon the written documents and any evidence produced by the taxpayer at a hearing. A taxpayer who requests the Commissioner to render his decision based upon written documents is not entitled by law to any other administrative hearing prior to the Commissioner's rendering of his decision, and, if necessary, the issuing [of] a final assessment and demand for payment or issuing of a certificate of indebtedness.
   (c) Within thirty (30) days after the service of notice of the proposed assessment or action, the taxpayer may file with the Commissioner a written protest under oath, signed by himself or his duly authorized agent, setting forth the taxpayer's reasons for opposing the proposed assessment.
   (d) The Commissioner may in his discretion extend the time for filing a protest for any period of time not to exceed an additional ninety (90) day period.

trative hearing. The notice further explained that failure to submit a written protest would constitute a waiver of any protest to the assessment, and that a final assessment would then be made.

The Rosses did not request an administrative hearing or submit payment after receiving the notice of proposed assessment.[3] Accordingly, the DFA sent the Rosses a final assessment and demand for payment on October 5, 1984. The Rosses were advised that failure to make payment within ten days would result in the filing of a certificate of indebtedness against them in the Circuit Court of Jefferson County, and that entry of such a certificate would constitute a judgment against them. The Rosses responded by letter on October 11, 1984, offering no objection to the final assessment of $306.45, but indicating that they were unable to pay the entire amount. They asked the DFA to arrange for payment on an installment basis so that they could satisfy the liability without the filing of a certificate of indebtedness.

The parties subsequently agreed on a payment schedule, but the Rosses failed to make payments as arranged. Therefore, on December 17, 1984, the DFA filed a certificate of indebtedness in the Jefferson County Circuit Court. A copy of the certificate was mailed to the Rosses, together with a letter explaining that execution of the judgment would be withheld if the Rosses took action to make payments in accordance with the parties' agreement. Thereafter, the Rosses submitted two $50.00 payments.

In February 1985, Simmons First National Bank of Pine Bluff, Arkansas, brought a foreclosure action in a state court against the Rosses, who had defaulted on a mortgage the bank held on their home. The bank also sued the IRS[4] and the DFA, seeking a declaration that existing federal and state tax liens were inferior to the mortgage. The Rosses filed a cross-complaint against the IRS, and a third-party complaint against Mahlon Martin in his official capacity as Director of DFA. The federal government removed the entire action to the District Court for the Eastern District of Arkansas, which granted summary judgment in favor of the bank on its claims, and granted the government's motion to dismiss the Rosses' cross-complaint against the IRS.

In their third-party complaint against Mahlon Martin, the claim at issue on this appeal, the Rosses challenged the constitutionality of the Arkansas Tax Procedure Act. Asserting jurisdiction under 42 U.S.C. § 1983, they sought a declaration that the State's tax lien was void, claiming that the certificate-of-indebtedness procedure violated their right to due process of law. Both sides moved for summary judgment on this issue. The District Court granted Martin's motion, noting that the State can file a certificate of indebtedness only after the taxpayer has had an opportunity to seek relief from the Commissioner's decision. The Court concluded that the Arkansas Tax Procedure Act complies with the fairness requirements of the Due Process Clause, and entered judgment in the amount of $206.45 in favor of the State of Arkansas. This appeal followed.

■ The Rosses now argue that the State deprived them of property without due process by filing a certificate of indebtedness and creating a judgment against them without adequately informing them of appeal procedures available under the Arkansas Tax Procedure Act. They complain that, although taxpayers receive notice of their right to file a protest with the Commissioner of Revenues, they are not informed that the hearing on their protest

---

3. In their motion for summary judgment filed in December 1985, the Rosses indicated that they filed a written protest and that an administrative hearing was held. However, it does not otherwise appear from the record on appeal that the Rosses actually protested the proposed assessment. Furthermore, the Rosses in effect admitted the facts recited in text through a letter from their attorney dated November 5, 1985. App. A–14, A–16.

4. In 1983, the IRS filed a federal tax lien against the Rosses because of a deficiency in their federal income tax for 1980.

will be conducted by an independent hearing officer,[5] or that they may seek de novo judicial review of a final administrative decision.[6] The Rosses suggest that the State be required to attach a copy or summary of all relevant statutory provisions to notices of proposed and final assessments, so that taxpayers will not have to seek legal assistance. In short, the Rosses do not challenge the adequacy of protest and appeal procedures provided under the Act, but argue that due process requires that taxpayers be given actual and individual notice of the entire appeal procedure.

We do not agree. The procedures for protesting and appealing tax assessments are clearly set forth in Ark.Stat.Ann. §§ 84–4719–4721, and, as the District Court noted, all persons are generally presumed to know the law. See, *e.g., Atkins v. Parker,* 472 U.S. 115, 105 S.Ct. 2520, 2530, 86 L.Ed.2d 81 (1985); *North Laramie Land Co. v. Hoffman,* 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1925) ("All persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them...."). Admittedly, the State may not rely on the presumption of knowledge of the law in all circumstances. For example, the presumption may be overcome in cases where a statute has been amended without providing a sufficient "grace period" to give persons affected by the change an opportunity to familiarize themselves with the law, see *Texaco, Inc. v. Short,* 454 U.S. 516, 532–33, 102 S.Ct. 781, 793–94, 70 L.Ed.2d 738 (1982), or where sanctions may be imposed on an individual for failing to act, but the individual is in no way alerted to the consequences of his inaction. See, *e.g., Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (ordinance making it an offense for a convicted felon to remain in Los Angeles more than five days without registering with the police could not be applied to a person who neither knew nor could reasonably have been expected to know of his legal obligation). The Arkansas Tax Procedure Act, however, does not comparably strain the requirements of due process. Indeed, § 84–4718 of the Act re-. quires the DFA to notify taxpayers of a proposed assessment, the basis for that assessment, and their right to file a protest with the Commissioner of Revenues before a final assessment is made. We see no

---

5. Section 84–4720 provides in part:

(a) The Commissioner shall appoint a Hearing Officer to review all written protests submitted by taxpayers, hold all hearings, and make written findings as to the applicability of the proposed assessment. Decisions of the Hearing Officer shall be final, unless revised by the Commissioner.

\*   \*   \*   \*   \*   \*

(b) The Commissioner may appoint one [1] or more Hearing Officers, but the person or persons occupying that appointment shall not contemporaneously with the holding of that appointment have any other administrative duties within the Division of Revenues of the Department of Finance and Administration.

6. Section 84–4721 provides in part:

(a) Within thirty (30) days of the issuance of the Notice and Demand for payment of a deficiency in tax established by a final determination of the Hearing Officer or the Commissioner under Section 20 [§ 84–4720] of this Act, a taxpayer may seek judicial relief from such final determination by either:

(1) Paying under protest the amount of the deficiency, plus penalty and interest determined by the Commissioner to be due, and

filing a suit to recover such amount within one (1) year from the date of payment under protest, or

(2) Filing with the Commissioner a bond in double the amount of the tax deficiency due and by filing suit within thirty (30) days thereafter to stay the effect of the Commissioner's determination. The bond shall be subject to the condition that the taxpayer shall file suit within thirty (30) days after filing the bond, shall faithfully and diligently prosecute the suit to a final determination and shall pay any deficiency found by the court to be due and any court cost assessed against him. Taxpayer's failure to file suit, diligently prosecute the suit, or pay any tax deficiency and court costs, as required by this subsection, shall result in the forfeiture of the bond in the amount of the assessment and assessed court costs.

(b) Jurisdiction for a suit to contest a determination of the Commissioner shall be in the Pulaski County Chancery Court, or the Chancery Court of the County in which the taxpayer resides or has his principal place of business, where the matter shall be tried de novo. An appeal will lie from the Chancery Court to the Supreme Court of Arkansas as in other cases now provided by law.

reason why taxpayers so notified should not be expected to take the initiative to find out the extent of any additional appeal rights under the Act and assert them. The Act is not unconstitutional because it fails to require actual notice of the entire appeal procedure.

■ Nor can we say that the Act as applied in this case violated the Rosses' right to due process of law. The notice of proposed assessment the Rosses received in July 1984 informed them of their right to file a protest and request an administrative hearing. That notice also advised the Rosses that failure to challenge the proposed assessment would constitute waiver of any further protest or claim against the State on account of the assessment. When the Rosses did not request administrative review, the DFA sent a notice of final assessment and demand for payment which explained that failure to submit payment within ten days would result in the filing of a certificate of indebtedness. It was not until another two months had passed and the Rosses had failed to comply with an agreed-upon schedule for payments that the DFA issued a certificate of indebtedness. In short, the State obtained a tax lien only after giving the Rosses notice and an opportunity to be heard.

In the circumstances, we reject the Rosses' challenge to the constitutionality of the Arkansas Tax Procedure Act, both on its face and as applied in this instance. Accordingly, the judgment of the District Court is affirmed.